1    UNITED STATES BANKRUPTCY COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    (OAKLAND DIVISION)

4  In re:

5  BROOK STREET HOLDINGS LLC,          Case No. 19-41564

6                                      Chapter 7

7                                      Oakland, California
                                       October 10, 2019
8                                      1:00 p.m.
        Debtor.
9  _____/

10              TRANSCRIPT OF PROCEEDINGS
        ORDER TO SHOW CAUSE AS TO DAVID IRA KELVIN AND
11                DONALD CHARLES SCHWARTZ

12        BEFORE THE HONORABLE ROGER L. EFREMSKY
             UNITED STATES BANKRUPTCY JUDGE
13

14  APPEARANCES:

15  For Donald Schwartz:     SAMUEL C. BELLICINI, ESQ.
                             1005 Northgate Drive #240
16                           San Rafael, California 94903

17
    For the Trustee:         SHIERKATZ
18                           BY: JEREMY W. KATZ, ESQ.
                             930 Montgomery Street #600
19                           San Francisco, California 94133

20
    In pro per:              DAVID IRA KELVIN
21

22  Also Present:            DONALD SCHWARTZ

23

24

25

1   APPEARANCES (CONTINUED):

2
    For the U.S. Trustee:       OFFICE OF THE U.S. TRUSTEE
3                               BY: TREVOR FEHR, TRIAL ATTORNEY
                                280 South First Street, Ste.268
4                               San Jose, California 95113

5
    For Jerry Edwin Heath:      MAAS & RUSSO, LLP
6                               BY: DANIEL J. RUSSO, ESQ.
                                521 Georgia Street
7                               Vallejo, California 94590

8
    Court Recorder:             DAN SONDHEIM
9                               UNITED STATES BANKRUPTCY COURT
                                1300 Clay Street
10                              Oakland, California 94612

11
    Transcription Service:      Jo McCall
12                              Electronic Court
                                Recording/Transcribing
13                              2868 E. Clifton Court
                                Gilbert, AZ 85295
14                              Telephone: (480) 361-3790

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

October 10, 2019                                    1:00 p.m.

-oOo-

1    COURTROOM DEPUTY: All rise.  This is the United

States Bankruptcy Court, Northern District of California,

with The Honorable Roger L. Efremsky presiding.

THE COURT: Good afternoon.  Please be seated.

ALL COUNSEL: Good afternoon.

COURTROOM DEPUTY: Calling Case No. 19-41564,

Brook Street Holdings LLC.  Appearances, please.

MR. KELVIN: I'm David Kelvin.  I'm appearing

pursuant to an Order to Show Cause.

COURTROOM DEPUTY: I need you to speak into the

microphone.

MR. KELVIN: Oh, I'm sorry.  I thought somebody

else was going to speak first.  David Kelvin, I'm appearing

pursuant to an Order to Show Case.

THE COURT: All right.  Good afternoon, Mr.

Kelvin.

MR. BELLICINI: Good afternoon, Your Honor, Sam

Bellicini appearing for attorney, Donald Schwartz.  Mr.

Schwartz just texted me and said that he's parking.

THE COURT: All right.  Very good.  Thank you, Mr.

Bellicini.

MR. BELLICINI: Thank you

1      MR. KATZ: Jeremy Katz for the Trustee, here to

2 answer any questions.

3      THE COURT: All right.

4      MR. FEHR: Good afternoon, Your Honor, Trevor Fehr

5 on behalf of the United States Trustee.

6      THE COURT: All right.  Good afternoon, Mr. Fehr.

7      MR. RUSSO: Good afternoon, Your Honor.  My name

8 is Daniel Russo.  I'm kind of a semi-tourist on this.  I

9 represent the managing partner of the LLC.

10      THE COURT: That is?

11      MR. RUSSO: Is Jerry Edwin Heath.

12      THE COURT: And you're Daniel Russo?

13      MR. RUSSO: Yes.

14      THE COURT: All right.  Monica, do you have Mr.

15 Russo's card?

16      COURTROOM DEPUTY: I do.

17      THE COURT: All right.  Excellent.  Let's wait for

18 Mr. Schwartz to arrive here.  As a side matter, Mr. Fehr, I

19 saw that the United States Trustee has requested an order

20 under Rule 2004 for an examination and production of

21 documents directed to Edwin Heath.  I just had a question.

22 There were two items requested, and I just wanted to be

23 clear on the dates.  It was Line Item (c); it said "Copies

24 of the Debtor's balance sheet and income statement for the

25 year ending December 31st, 2019."

1          MR. FEHR: Oh, apologies, Your Honor.  That should

2    be 2018.

3          THE COURT: And then the same thing for Line Item

4    (n) "Copies of Wood Street Plaza, LLC's balance sheet and

5    income statement for the year ending December 31st, 2019,"

6    also, 2018?

7          MR. FEHR: Yes, Your Honor.

8          THE COURT: Okay.  I'm prepared to sign off on

9    that.  If you just make those two corrections to Line Items

10   (c) and (n) and basically upload a new order that clarifies

11   those two things.

12         MR. FEHR: Will do, Your Honor.  Thank you.

13         THE COURT: Okay, very good.

14      (Pause.)

15         And is Mr. Heath here, Mr. Russo?

16         MR. RUSSO: No, Your Honor.

17         THE COURT: Okay.

18      (Pause.)

19         And Mr. Katz, the couple behind you are?

20         MR. KATZ: Mr. and Mrs. Loftin (Phonetic).

21   They're the ones who filed the Proof of Claim.

22         THE COURT: All right.  Good afternoon.  And then

23   the gentleman in the far back, just so I know.

24         VOICE: Steven Morton (Phonetic), Wendel Rosen,

25   representing Mr. Yee (Phonetic) who holds the first

1  mortgage.

2          THE COURT: All right.  Thank you.  All right.

3  Mr. Schwartz is here?

4          MR. BELLICINI: Mr. Schwartz is here, Your Honor.

5          THE COURT: all right.  Okay, Mr. Bellicini.

6          MR. BELLICINI: Should I approach?

7          THE COURT: Yes, please.

8          MR. BELLICINI: Thank you, Your Honor.

9          THE COURT: Okay.  All right.  Anything -- and Mr.

10 Bellicini, I've seen the most recent papers filed on

11 October 7th.  Anything else you want to bring to the Court's

12 attention?

13         MR. BELLICINI: I don't think I have an update at

14 this junction, Your Honor.

15         THE COURT: Okay.  All right.  And Mr. Schwartz,

16 if you could come forward, please.

17         MR. BELLICINI: Do you want me to step back?

18         THE COURT: You can have a seat there, Mr.

19 Bellicini.

20         MR. BELLICINI: Thank you, Your Honor.

21         THE COURT: Mr. Schwartz, if you could stand, I'm

22 going to have you sworn in.

23         COURTROOM DEPUTY: Do you solemnly swear or affirm

24 that the testimony you're about to give in the matter now

25 pending before this Court will be the truth, the whole

1  truth, and nothing but the truth?

2              MR. SCHWARTZ: I do.

3              COURTROOM DEPUTY: Thank you.

4              THE COURT: All right.  Mr. Schwartz, you can have

5  a seat there and then if you can, pull that closer to you.

6  Very good.

7              MR. SCHWARTZ: I might need an assisting listening

8  device.  I'm not sure yet.

9              THE COURT: All right.  Ms. Berly, (Phonetic) can

10 you assist Mr. Schwartz with that?

11             MR. SCHWARTZ: Let's give it a try.  Thank you.

12             COURTROOM DEPUTY: Do you want to try it?

13             THE COURT: Okay.  If you have any issues, let me

14 know and then we'll give you the device, unless you want to

15 put it on right now.

16             MR. SCHWARTZ: Okay.  I'll put it on.

17             THE COURT: It fits right into your ears.

18             MR. SCHWARTZ: Okay.

19             THE COURT: Mr. Schwartz, can you hear me?

20             MR. SCHWARTZ: Well, yes, but not through this

21 device.

22             THE COURT: Okay, Monica, can you see if you

23 can -- they're not hooked up?

24             COURTROOM DEPUTY: Here it goes.

25             THE COURT: Is that better, Mr. Schwartz?

1          MR. SCHWARTZ: Yes.  Thank you very much.

2          THE COURT: All right.  Excellent.  Monica, thank

3    you.  All right.  Mr. Schwartz, I just want to go through

4    your declaration, so I understand how it is that you came

5    in possession of the various documents that you filed for

6    this bankruptcy for Brook Street Holdings, LLC in Case No.

7    19-41564.  In reviewing your initial declaration, you

8    indicate that on July 9th, 2019 -- I'm quoting from your

9    declaration:

10              "I received instructions from the Debtor to file

11              the petition for bankruptcy in this matter.  The

12              petition was signed by Attorney Kelvin.  Attached

13              as Exhibit A is a true and correct copy of the

14              electronic facsimile transmittal I received from

15              the Debtor at 9:37 a.m. on July 9th, 2019."

16         When you say you received it from the Debtor, are

17    you saying you received it from Brook Street Holdings, LLC

18    but via Mr. Heath?

19         MR. SCHWARTZ: That's my belief, yes.

20         THE COURT: That's a yes?

21         MR. SCHWARTZ: Yes.

22         THE COURT: Okay.  And Exhibit A is a g-mail.  It

23    appears to emanate from a Fed Ex office so that's coming

24    from Brook Street Holdings, LLC's office or designated --

25         MR. SCHWARTZ: So to speak, yes.

1          THE COURT: My understanding is it's a Fed Ex

2     office or Fed Ex depository?

3          MR. SCHWARTZ: That's what it looks like.

4          THE COURT: Okay.  And then I see that it's sent

5     to Trial Law at Crusio.com (Phonetic).  Who is that?

6          MR. SCHWARTZ: That's an e-mail address for me.

7     It wasn't created by me, that name style, but that is my e-

8     mail address.

9          THE COURT: Okay.  And then Exhibit A is the

10    petition that you received on July 9th from Mr. Heath.

11         MR. SCHWARTZ: That's my belief, yes.

12         THE COURT: Well, it's what your testimony is.

13         MR. SCHWARTZ: Well, I received that e-mail –- I

14    use an e-mail –- excuse me, I use a fax service, so faxes

15    are converted somewhere in the cloud to a pdf file, and

16    then I receive an e-mail.

17         THE COURT: Okay.  My point is, Exhibit A is what

18    you believe you received directly from Brook Street

19    Holdings, LLC and/or Mr. Heath.

20         MR. SCHWARTZ: That's correct.

21         THE COURT: Okay.  Then at paragraph 3, you say

22    that"

23              "On the morning of July 10th, 2019, I had a

24              telephone conversation with Attorney Kelvin and

25              confirmed that it was Debtor's instructions to

1          file the petition.  At 9:14 a.m., I sent a

2          confirming e-mail message to attorney Kelvin.

3          Attached as Exhibit B is a true and correct copy

4          of that confirming e-mail message."

5      MR. SCHWARTZ: Well, that's a little bit out of

6  sequence.  Before I filed it, when I was talking to Heath,

7  and I believe there was someone else on the line, his

8  assistant or somebody, I wanted to talk to Kelvin before I

9  filed it, and on the Heath side of the call, Kelvin was

10 phoned.  Now Kelvin's declaration says I called him.  No, I

11 didn't -- I initiated talking to Kelvin.  I wanted to talk

12 to Kelvin before I filed it.  And on the Heath side of the

13 call, Kelvin was patched in or three-wayed in or four-wayed

14 in; I don't know.

15     THE COURT: So he may have been -- wherever you

16 were calling, he may have been in that office or he may

17 have been reached by a cell phone or something and patched

18 in?

19     MR. SCHWARTZ: I believe he was patched in.  I

20 mean it may have appeared to him that I was calling, but he

21 was patched in.

22     THE COURT: Okay.  Your point is -- I guess what I

23 want to get at is, on the morning of July 10th, 2019 at

24 approximately 9:14 a.m., at that time, you initiated a call

25 to Mr. Kelvin.

1    MR. SCHWARTZ: Well, again, I initiated wanting to

2  talk to him, but I didn't dial his number.

3    THE COURT: You dialed -- who did you dial?

4    MR. SCHWARTZ: I was contacted by Heath, and I

5  required to talk to Kelvin before I filed something on his

6  behalf.

7    THE COURT: Okay.  I'm just trying to be clear on

8  this.  July 9th is when you say you received instructions

9  and the petition from Mr. Heath.

10   MR. SCHWARTZ: I believe there was -- honestly,

11 there was a communication on the 9th.  I hadn't received the

12 petition until I believe it was 9:37 at night, and as I

13 recall, I was going to bed.  I may or may not have seen it

14 that night, but I believe from my recollection, I knew it

15 was coming that night of the 9th.  And I also remember -- I

16 don't know why I remember it specifically, but I remember

17 I'm going to bed.  And I work out of a home office.  I'm

18 going to bed; I'm not going to stay up and open it up and

19 look at it.

20   THE COURT: All right.  Well, Mr. Schwartz --

21   MR. SCHWARTZ: To my belief, I opened it up that

22 night.

23   THE COURT: Okay.

24   MR. SCHWARTZ: Excuse me, the next morning; I

25 misspoke.

1       THE COURT: All right.  Well, that contradicts

2  what your sworn statement says.  I'll read again from your

3  sworn statement.  That was your initial statement filed in

4  response to the OSC, which was filed with this court on

5  September 4ᵗʰ, 2009 (sic) at Docket No. 20.  And paragraph 2

6  says:

7                "On July 9ᵗʰ, 2019, I received instructions from

8                the Debtor to file the petition for bankruptcy in

9                this matter.  The petition was signed by Attorney

10               Kelvin.  Attached as Exhibit A is a true and

11               correct copy of the electronic facsimile

12               transmittal I received from the Debtor at 9:37

13               a.m. in the morning on July 9ᵗʰ, 2019."

14      MR. SCHWARTZ: No.  I believe that's a –- I

15  presently believe that's a typo that should be 9:37 p.m.

16  That's my belief.

17      THE COURT: Okay.  I'm looking at the g-mail.  It

18  says Tuesday, July 9ᵗʰ, 2019, 9:37 p.m.  Okay.  All right.

19  Then on the morning of July 10ᵗʰ –- this is paragraph 3 from

20  your initial declaration.  It says:

21               "On the morning of July 10ᵗʰ, 2019, I had a

22               telephone conversation with Attorney Kelvin and

23               confirmed that it was Debtor's instructions to

24               file the petition.  At 9:14 a.m., I sent a

25               confirming e-mail message to Attorney Kelvin.

1          Attached as Exhibit B is a true and correct copy

2          of that confirming e-mail message."

3          Whether you initiated -- you initiated a call to

4     Mr. Kelvin's office.  You didn't reach him directly, but he

5     was then subsequently patched in?

6          MR. SCHWARTZ: No.  I was talking to Heath, and I

7     wanted to talk to Kelvin directly about -- I was of the

8     belief at that time that I could use my ecf credentials --

9          THE COURT: Okay.  Before we get to that, I want

10    to get -- I'm just trying to -- on the morning of July 10th,

11    it had to be prior to 9:14 because in paragraph 3, it says:

12          "At 9:14 a.m., I sent a confirming e-mail message

13          to Attorney Kelvin.  Attached as Exhibit B is a

14          true and correct copy of the confirming e-mail

15          message."

16    So prior to 9:14 a.m., you communicated with Mr. Kelvin?

17          MR. SCHWARTZ: Okay.  I apologize.  I communicated

18    with Kelvin before I filed it.  At what time was it filed?

19    Can you refresh my recollection?

20          THE COURT: Well, you state in your declaration at

21    paragraph 3, it say:

22          "At 9:14 a.m., I sent a confirming e-mail message

23          to Attorney Kelvin.  Attached as Exhibit B is a

24          true and correct copy of the confirming e-mail

25          message."

1   And when I refer to Exhibit B, it's dated Wednesday, July

2   10th, 2019 at 9:14 a.m. and it says:

3         "Dave: This will confirm our call this morning

4         that you instruct and authorize the -- my courier

5         deliver to the USBK Court the attached petition."

6   And the attached petition is the voluntary petition

7   referring to Brook Street Holdings, LLC.

8         MR. SCHWARTZ: I was confirming the conversation

9   that we had just had.

10        THE COURT: Right.  So my point is this, prior to

11   9:14 in the morning on July 10th, you communicated directly

12   with Mr. Kelvin seeking confirmation that the client wanted

13   to proceed with filing the bankruptcy, and he said what?

14        MR. SCHWARTZ: I don't recall his exact words, but

15   the gist of what I -- I guess you would say I feel, the

16   feeling that I got from him was he didn't like it, but he

17   was okay with it.

18        THE COURT: Okay.

19        MR. SCHWARTZ: If that makes any sense.

20        THE COURT: It doesn't.  You received a request

21   from Mr. Heath, the managing member of Brook Street

22   Holdings, LLC, on July 9th saying, file this bankruptcy

23   petition.  You say that on July 10th, you were communicating

24   with Mr. Heath and said, before I file this, I want to talk

25   with Mr. Kelvin about the filing.

1              MR. SCHWARTZ: That's correct.

2              THE COURT: And what did you ask Mr. Kelvin?

3              MR. SCHWARTZ: Do you want me to file this, or

4    words to that effect.

5              THE COURT: Okay.  And he said?

6              MR. SCHWARTZ: My recollection is -- he has a way

7    about him -- well, he's an old family friend; I've known

8    Dave for decades -- and we could get into that if you want,

9    but he has a way about him that's -- well, okay -- that's

10   what I would say was his response.

11             THE COURT: Okay.  Based on that response -- and

12   by the way, was Mr. Heath on that phone conversation?

13             MR. SCHWARTZ: Yes.

14             THE COURT: Okay.  So then you sent a confirming

15   e-mail to him, which is your Exhibit B, which I previously

16   read that's dated Wednesday, July 10th, 2019 at 9:14 a.m.:

17             "Dave: This will confirm our call this morning

18             that you instruct and authorize the -- my courier

19             -- delivery to the USBK Court the attached

20             petition."

21   And the attached petition is the voluntary petition that

22   you received from Mr. Heath on July 9th.

23             MR. SCHWARTZ: Yes.  It's the exact same pdf file.

24   I stored it on my computer with a new name because when it

25   came in faxed, it had no title, so it could be put into a

1  filing system, a digital filing system.  In other words, I

2  labeled it however you see it labeled.  It probably says

3  Brook Street BK petition.

4          THE COURT: Well, I guess what I have4 is -- I'm

5  referring to --

6          MR. SCHWARTZ: It's the exact same pdf file.

7          THE COURT: Okay.  So there were no changes made

8  to the petition itself.

9          MR. SCHWARTZ: No.  I did not make any.

10          THE COURT: All right.  So Exhibit A is the

11  petition that was received from Mr. Heath to file.  Exhibit

12  B is an exact copy, no changes whatsoever.

13          MR. SCHWARTZ: Correct.

14          THE COURT: You didn't authorize any changes?

15          MR. SCHWARTZ: I didn't authorize any changes.

16          THE COURT: You didn't personally make any

17  changes?

18          MR. SCHWARTZ: I made no changes.

19          THE COURT: Okay.  All right.  And then reading

20  on, paragraph 4 of your initial declaration, it says:

21          "44 minutes later, 9:58 a.m., I used my

22          electronic case filing for an ecf credentials to

23          file the within petition.  The Pacer copy of the

24          petition is attached as Exhibit C.  I ask the

25          Court to take judicial notice of Exhibit C."

1 Exhibit C is the voluntary petition for Brook Street

2 Holdings, LLC, and Exhibit C then would be a true and

3 correct copy of the initial petition received from Mr.

4 Heath, Exhibit A?

5          MR. SCHWARTZ: Absolutely.

6          THE COURT: Okay.

7          MR. SCHWARTZ: To make a change, I would have to

8 print it out or something, which I didn't do.

9          THE COURT: All right.  I guess what I want to be

10 clear on is, the petition that came in from Mr. Heath is

11 the same petition that was copied to Mr. Kelvin and

12 ultimately filed with the court.

13          MR. SCHWARTZ: Correct.

14          THE COURT: There were no changes made whatsoever.

15          MR. SCHWARTZ: Correct.

16          THE COURT: And was there anybody in your office?

17          MR. SCHWARTZ: Well, by then I was over the hill

18 at the law library in Santa Clara County.

19          THE COURT: Okay.  Well, on July 9th -- I mean did

20 anybody else have possession of the initial petition

21 received from your client?

22          MR. SCHWARTZ: No.

23          THE COURT: Okay.  So you're the only one that had

24 access to it.

25          MR. SCHWARTZ: Correct.

1         THE COURT: And the same thing on July 10th.

2         MR. SCHWARTZ: Correct.

3         THE COURT: Okay.  In paragraph 5, it says:

4             "Within minutes I received a copy of the

5             voluntary dismissal in this matter, apparently

6             signed by Attorney Kelvin.  63 minutes after

7             filing the petition at 11:01 a.m. on July 10th,

8             2019, I filed the voluntary dismissal.  The Pacer

9             copy of the dismissal is attached as Exhibit D.

10            I ask the Court to take judicial notice of

11            Exhibit D."

12   All right.  With regards to the filing of the bankruptcy

13   between Brook Street Holdings, LLC, when did you get

14   involved with any discussions regarding the filing of the

15   bankruptcy?

16        MR. SCHWARTZ: I'd have to check my records, but

17   within -- and I'm -- it's an educated guess, within 24

18   hours of July 9th.  Now this may not rub His Honor the right

19   way, but I have -- I am a former senior financial analyst

20   in the Department of Justice in Washington.  I served on

21   the staff of the Assistant Attorney General in charge of

22   the anti-trust division.

23        THE COURT: Okay.

24        MR. SCHWARTZ: I have an MBA in Finance and

25   Investments from the George Washington University.  I went

1  to law school at night.  I worked -- I got that job at 23

2  years old, and I worked full time in the Justice Department

3  and went to law school on the night program at Georgetown.

4  Prior to that, I had worked on Capitol Hill for Congressman

5  Ron --

6          THE COURT: And how is this relevant?

7          MR. SCHWARTZ: Well, I have sort of a saying about

8  competition and free markets and the formation of capital

9  because I believe that -- I wrote a paper about it -- that

10 free competition requires certain freedom of the formation

11 of capital because I happen to believe that all

12 competition --

13         THE COURT: But Mr. Schwartz, how is this relevant

14 to the filing of this bankruptcy?

15         MR. SCHWARTZ: It's -- I'm getting to that.

16         THE COURT: Okay.

17         MR. SCHWARTZ: So when -- now I have operated for

18 many years under a belief that people have a constitutional

19 right to file bankruptcy.  I don't know if the law bears

20 that out, but I know that bankruptcy is mentioned in the

21 U.S. Constitution, so I had a belief for many years -- I

22 don't know if I believe that now -- but I had a belief for

23 many years that there is a constitutional right to access

24 to the Bankruptcy Courts.  I have felt that that's a very

25 strong right that should not be backed away from.  People

1  should be encouraged to assert it.  And the U.S. Supreme
2  Court came out with "Citizens United."  What they said in
3  that opinion was that -- I don't know if the Court said
4  that corporations are -- or LLC's, if you will, are people.
5  I don't know if that's really what the opinion says, but
6  the Court does say that people have a right of free speech,
7  and the Court is not going to get into how they aggregate
8  it, if it be through corporation or otherwise.

9          And I happen to think that that's probably an
10 appropriate approach.  So I developed -- I have to say,
11 Your Honor, I really wanted to learn bankruptcy law.  It
12 appealed to my sense of intellect.  I have tried and I've
13 tried; I've gone to the Judges' Conference in San
14 Francisco.  I concluded that you cannot maneuver it without
15 making it an all-day, every-day endeavor and having
16 somebody looking over your shoulder.  I just don't -- you
17 might call it a "closed shop."  But in any event, I wanted
18 to learn bankruptcy.  I think that's over with now, but --
19 it's just not going to happen, if I ever practice law
20 again, which based on my health right now, is very
21 doubtful.

22          But in any event, I had a belief that I was
23 working on to develop a test case that LLC's are to be able
24 to file a Chapter 13 because most -- they say two-thirds of
25 all new jobs created in the United States are created

1  through the formation of small business, and I wanted to

2  take -- and I think it's a good faith extension of the

3  law -- a case, a test case, through the Bankruptcy Courts

4  in wherever, to the Ninth Circuit or to the U.S. Supreme

5  Court, to the effect that an LLC ought to be able to file a

6  Chapter 13.  So when Heath first communicated with me about

7  this, I recommended filing a 13 and making it a test case.

8  He came back with me with a 7.  So, you know, that's the

9  discussion I had with Heath within, say, 24 hours or

10 thereabouts from July 9th.

11          THE COURT: So 24 hours prior to July 9th, you were

12 talking to Mr. Heath about filing a Chapter 13.

13          MR. SCHWARTZ: That's what I thought about doing.

14 I might have felt different about it had he agreed with

15 that.  I've talked to James Hayworth about that.  I

16 consider him acting in bankruptcy law.  He filed a

17 spectacular idea.

18          THE COURT: Well, my question is, you testified

19 that the petition you received -- you didn't prepare the

20 petition; it was prepared by someone else.

21          MR. SCHWARTZ: That's correct.

22          THE COURT: But the petition you received and

23 ultimately filed is the exact same document.

24          MR. SCHWARTZ: Absolutely.

25          THE COURT: Okay.  And that you made no changes to

1 | the original document received.

2 |         MR. SCHWARTZ: Of course not.

3 |         THE COURT: Okay.

4 |         MR. SCHWARTZ: I filed the exact same pdf file

5 | that I received -- as I received a fax because it's

6 | converted to pdf -- and the only thing that changed was the

7 | title of the document, the pdf file, so I could store it in

8 | the order that --

9 |         THE COURT: You didn't change anything on the

10 | petition itself that you received.

11 |         MR. SCHWARTZ: No, absolutely not.

12 |         THE COURT: All right.

13 |         MR. SCHWARTZ: Can I elaborate a little bit more

14 | on my Chapter 13 hypothesis?

15 |         THE COURT: No.  I mean I -- you're not alone in

16 | that belief.

17 |         MR. SCHWARTZ: Because, you know, when the Court

18 | says it's not -- when the Superior Court says it's not

19 | going to get into how people aggregate their free speech,

20 | something went off in me that said, well, maybe the

21 | Court -- if they're going to have "Citizens United," then

22 | maybe we could carry it all the way through and say that

23 | the Court should not get into how people aggregate capital.

24 | And the aggregation of capital in small business is

25 | obviously something very important in our economy.

1      THE COURT: All right.  Let me move on to the

2  declaration that was filed with the court, Docket No. 35,

3  on October 7, 2019.  In paragraph 2, you indicate that:

4          "During September 25th, 2019 telephone

5          conversation with Mr. Heath, myself, and Mr.

6          Bellecini, Mr. Heath said that he met Mr. Kelvin

7          in person at the San Jose Superior Court on

8          either July 9th or July 10th, 2019, and Mr. Kelvin

9          signed the within petition for bankruptcy.  I do

10          not have knowledge or belief who is in possession

11          of the (quote  'wet signature', closed quote,

12          petition.  I do not have it because it never came

13          into my possession.

14  Did you ask Mr. Heath if he had the original wet

15  signatures?

16      MR. SCHWARTZ: I've asked him since this came up,

17  and he says, no, he doesn't have it.

18      THE COURT: That he does not have them.

19      MR. SCHWARTZ: Of the petition, correct.

20      THE COURT: Right.  Did he say he ever had them?

21      MR. SCHWARTZ: I didn't ask him that.

22      THE COURT: Okay.

23      MR. SCHWARTZ: I assumed so.

24      THE COURT: All right.  And then do you have the

25  original wet signature for the dismissal?

1      MR. SCHWARTZ: By the way, I believe I asked him

2  that question when we were initially filing it, that he had

3  it, but since the passage of time, I have not asked him

4  again.

5      THE COURT: Okay.  Do you have the original wet

6  signature of the dismissal?

7      MR. SCHWARTZ: Yes, I do.

8      THE COURT: All right.  Monica, can you get that?

9      MR. BELLECINI: Your Honor, would you permit me to

10  look at it as well?

11      THE COURT: I assume you had seen it.

12      MR. BELLECINI: I've only seen a copy.  I asked

13  Mr. Schwartz to bring it.

14      THE COURT: Why don't you approach -- go ahead,

15  Mr. Schwartz.

16      MR. BELLECINI: Thank you, Your Honor.

17      MR. SCHWARTZ: I have very bad lighting in my

18  office, and I thought that was it.  That's a copy.

19      THE COURT: Why don't we take a brief recess for

20  five minutes.  You can go look through the documents so you

21  can examine it.

22      MR. BELLECINI: Thank you, Your Honor.

23      THE COURT: Okay.  All right.

24      (Whereupon, a recess is taken at 1:35 p.m., and the

25  court is reconvened at 1:39 p.m.)

1          THE COURT: All right.  Back on the record.  Mr.

2    Bellecini, did you have an opportunity to review the

3    document?

4          MR. BELLECINI: I did, Your Honor, and it appears

5    to me Mr. Schwartz presented me with two documents, and if

6    I may approach Mr. Schwartz.

7          THE COURT: Please.  The record will reflect Mr.

8    Bellecini is approaching the witness.

9          MR. BELLECINI: He has given me two documents, one

10   appears to be a copy and the other one appears to be a wet

11   original.  It's in black ink, not blue ink, and I'm not a

12   handwriting expert, but it appears that this signature is

13   crisp, consistent with blank ink rather than xerox.

14         THE COURT: Okay.

15         MR. BELLECINI: I'll leave that for the Court to

16   decide.

17         THE COURT: All I'm going to ask Mr. Schwartz is

18   if he represents to me that this is the wet signature he

19   was handed, I'm just going to take it into the Court's

20   possession.

21         MR. BELLECINI: Fair enough.

22         THE COURT: All right.  Thank you.  All right.

23   Mr. Schwarz, if you -- Monica, if you could approach the

24   witness.  Mr. Schwartz, if you could provide Ms. Berly with

25   the original wet signature of the dismissal.

1          MR. SCHWARTZ: Thank you.

2          THE COURT: All right.  For the record, Mr.

3  Schwartz has handed my Courtroom Deputy what he purports to

4  be the original wet signature of a voluntary dismissal in

5  Case No. 19-41564.  We will mark this as the Court's

6  Exhibit No. 1.  Monica, I will give that back to you.

7          All right.  Then Mr. Schwartz, reading on from

8  your declaration filed -- Docket No. 35, October 7, 2019,

9  you indicate that you did not prepare the dismissal.  It

10 says:  "I did not prepare..." -- this is at paragraph 4:

11              "I did not prepare the within dismissal.  Mr.

12              Heath handed me the original dismissal on July

13              10th, 2019, and I obtained the copy that I filed

14              with Mr. Kelvin's e-signature from a flash drive

15              that Mr. Heath handed to me."

16 So the original wet signature is the same wet signature

17 dismissal that Mr. Heath handed to you on July 10th.

18         MR. SCHWARTZ: Correct.

19         THE COURT: Okay.  Going on, it says:

20              "In the telephone conversation my attorney and I

21              had with Mr. Heath on September 25th, 2019, Mr.

22              Heath stated he himself drafted the dismissal."

23 And then in paragraph 5, you say:

24              "In continuation of the time line from paragraph

25              8 of my declaration in support filed on September

1          27th, 2019, on July 10th, 2019 at 10:29 a.m., I

2          replied to Mr. Kelvin's e-mail of 10:11 a.m.,

3          copy attached hereto as Exhibit H and told him I

4          would dismiss the case."

5     Why did you tell him you were going to dismiss the case?

6          MR. SCHWARTZ: Because he was not -- the way I

7     took it -- he was not -- well, the way I took it, he --

8     when he replied -- after I filed it, I sent him the filed

9     petition, and so I confirmed the conversation by -- I sent

10    him the petition; I filed the petition.  I don't recall

11    which -- I believe I sent him the filed petition from the

12    ecf because I believe I'm now in a position of being his

13    lawyer, so to speak, so I'm copying him -- starting a

14    process of copying him on everything.  And then he

15    responds, that's not how I recall the conversation.  So I'm

16    thinking this guy is giving himself some liberal room or

17    something.  So we can't go there.  So better just dismiss

18    it.  Just forget it.  And I don't know if it makes sense to

19    His Honor or not, but my intention was to -- if there was

20    going to be a problem with this, I wanted it dismissed

21    before any trustee sale date so that we would not be

22    complicit with upending a trustee sale.

23          THE COURT: And when was the trustee sale?

24          MR. SCHWARTZ: I believe it was that day on July

25    10th.  I don't know that, but sitting here now, that's what

1  I believe.

2          THE COURT: All right.  Had you had any

3  communication with the --

4          MR. SCHWARTZ: That's why I tried to do -- I

5  believe it was around noon, maybe at noon.

6          THE COURT: And had you had any communication with

7  the foreclosing entity or agent for the entity saying that

8  they would postpone the foreclosure prior to the dismissal

9  being filed with the court?

10         MR. SCHWARTZ: I don't recall that.  I don't

11 recall that I had such a conversation.

12         THE COURT: Did Mr. Heath or Mr. Kelvin have a

13 communication with you saying that they had spoken with the

14 foreclosing entity or agent and they said that they would

15 go ahead and kick the foreclosure for a period of time so

16 we can go ahead and dismiss the bankruptcy?

17         MR. SCHWARTZ: I don't know, but I have no belief

18 that the sale date was not going forward.

19         THE COURT: Okay.

20         MR. SCHWARTZ: And, you know, subsequently, I

21 believe it's borne out that somebody else negotiated a

22 continuance of the sale date.

23         THE COURT: Okay.  And then you indicated that the

24 e-mail that you received with the petition from Mr. Heath,

25 you received that on July 9th at 9:37 p.m. in the evening,

1  correct?

2          MR. SCHWARTZ: That's what's dated on it.

3          THE COURT: But you didn't read it that night.

4          MR. SCHWARTZ: I don't recall that I did.  I don't

5  recall that I didn't, but I have no recollection of looking

6  at it that night.

7          THE COURT: So as you sit here today, you can't

8  tell the Court whether you looked at that e-mail on the

9  evening of July 9th or didn't look at it.  If you don't

10 know, I don't want you to speculate.

11         MR. SCHWARTZ: I don't know.  There's lots of

12 possibilities.  I mean it's possible I saw the e-mail and

13 just walked away and didn't open it up.  It's possible I

14 looked at it briefly, but my recollection was I'm going

15 to -- that's kind of early for me to go to bed, but I

16 recall -- I guess that's why I remember -- I just walked

17 away and went to bed.

18         THE COURT: All right.  And then on July 10th, you

19 got up in the morning at what time, roughly?

20         MR. SCHWARTZ: That was when I was in full tilt,

21 boogie mode, which I had been in for 33 years, and in less

22 than two weeks after July 10th -- in fact, 12 days after

23 July 10th, I was in the emergency room with a cardiac

24 incident.

25         THE COURT: My question to you is, on July 10th, do

1  you recall what time you got up that morning?

2          MR. SCHWARTZ: No.  But it's typical that I would

3  get up at 5:30 in the morning or so.

4          THE COURT: Okay.  And then some time later that

5  morning, you proceeded from -- now where did you -- where

6  is your home, when you woke up?

7          MR. SCHWARTZ: In Aptos, California.

8          THE COURT: Okay.  So in Aptos.  So some time

9  after you woke up, I assume you drove to San Jose?

10          MR. SCHWARTZ: That's correct.  I usually try to

11  get through the traffic before, you know, 6:00 o'clock when

12  it jams up.

13          THE COURT: Okay.

14          MR. SCHWARTZ: And I don't know if it's of any

15  interest to the Court, but just it's a matter of fact that

16  on July 22nd, I had a cardiac incident.  I was in the

17  emergency room.  My heart was stopped and restarted.

18          THE COURT: I'm sorry to hear that.

19          MR. SCHWARTZ: I subsequently found out that

20  that's not a pit stop at the Endy500, and it's taken me a

21  long time to recover from that.  I was --

22          THE COURT: Okay.  All right, well, Mr.

23  Schwartz --

24          MR. SCHWARTZ: I just want to say this because

25  it's just the truth.  I was back in the emergency room five

1 days later.  I was released and sent to a cardiologist.

2 That never happened.  I went back to the ER.  That was a

3 Monday, and then it was the following Thursday, I believe,

4 and then the following subsequent Saturday, I was

5 hospitalized, and there's not a clear diagnosis yet.

6    THE COURT: Okay.  I don't want to get into your

7 health issues.  I'm just noting it for the record.  I want

8 to go back to your declaration, Docket 35, filed on the 7th

9 of October, paragraph 5, where you go on and you state

10 that --

11    MR. SCHWARTZ: Can I say one thing, Your Honor?

12    THE COURT: Let me proceed with this.

13    MR. SCHWARTZ: Okay.

14    THE COURT: It says:

15    "At the time I was in the law library near San

16    Jose Superior Court with Mr. Heath."

17 This is on July 10th, 2019.

18    "Mr. Heath led me to believe that Mr. Kelvin was

19    nearby."

20 How did he do that?

21    MR. SCHWARTZ: He told me.

22    THE COURT: Okay.  Did he say where he was in San

23 Jose?

24    MR. SCHWARTZ: Some courthouse nearby.  I believe

25 it was the Hall of Justice Criminal Court on West Hedding

1  (Phonetic).

2         THE COURT: Okay.  You go on to say that:

3         "Mr. Heath left and returned and shortly with the

4         original of the dismissal and a flash drive

5         containing the copy with Mr. Kelvin's e-

6         signature.  I filed the dismissal at 11:01 a.m.,

7         Exhibit D to my declaration filed September

8         4,2019 and returned the flash drive to Mr. Heath.

9         At 11:05 a.m., I sent Mr. Kelvin another e-mail

10        attaching a copy of the filed dismissal, a copy

11        attached as Exhibit I.  I did not receive a reply

12        of any sort to either Exhibit H or I from Mr.

13        Kelvin."

14 All right.  I have one other question for you.  Can you

15 explain to the Court that if Exhibit A to Docket 20 filed

16 on September 4, 2019 is the original document you received

17 from the client, Exhibit A, and you testified that you

18 received it; you were the only one that had access to it --

19        MR. SCHWARTZ: This is the petition, correct?

20        THE COURT: The petition, correct.  -- that you

21 made no changes.  You simply took that document, put a

22 heading on it for purposes of being able to recover it from

23 a file standpoint, ultimately sent a copy to -- the

24 identical copy to Mr. Kelvin to confirm, I'm going to go

25 ahead and file this -- at least you believe it was his

1  instruction that it was okay to file it, and the client had

2  directed you, Mr. Heath, on behalf of the LLC, and then you

3  subsequently filed that same Exhibit A that's Exhibit C

4  which is attached to your declaration.  But when I review

5  Exhibit A, page 1, the box at the top, it says Case No; it

6  says Chapter you are filing under, Chapter 13 is checked.

7          MR. SCHWARTZ: Okay.  Well --

8          THE COURT: Right?  And then when I go to page 3

9  of Exhibit A, Question 7, "check one," and again the

10 Chapter 13 box is checked.  But when I go to Exhibit B, and

11 I go to page 1 of the petition, now Chapter 7 is checked,

12 and when I go to page 3 of Exhibit B, Chapter 7 is checked.

13 And then when I go to Exhibit C, I see that it too was

14 filed on page 1 as a Chapter 7 and page 3 of Exhibit C also

15 Chapter 7 is checked.  How can you explain that if you made

16 no changes and you filed the original document from the

17 client?

18         MR. SCHWARTZ: Is His Honor saying they're

19 different?

20         THE COURT: Mr. Bellecini, do you have copies of

21 the documents that you filed?

22         MR. BELLECINI: I did not bring a copy of the

23 September 4th declaration with me, Your Honor.

24         THE COURT: Ms. Berly, wCould you be kind enough

25 to print off Mr. Schwartz's declaration, and this is from

1  Docket No. 20, and print out, if you could, two copies of
2  the same with the attachments?
3          MR. SCHWARTZ: Okay.
4          COURTROOM DEPUTY: No. 20 has no attachments.
5          THE COURT: Well, I have -- it's the Respondent,
6  Donald Schwartz, Response to Order to Show Cause, Docket 20
7  filed 9-4-19.  That's Mr. Bellecini's -- no, excuse me.
8  Then Docket No. 21 is the Declaration of Mr. Bellecini who
9  then attaches.  So it's Docket No. 21.
10         COURTROOM DEPUTY: Okay.
11         THE COURT: So my prior references to Docket No.
12 20 really should be to Docket No. 21.
13         MR. SCHWARTZ: Okay.  Can I --
14         THE COURT: I want to print these out so that you
15 can take a look at them, and I want two copies so Mr.
16 Bellecini can see the same.
17         COURTROOM DEPUTY: You want just the first page.
18         THE COURT: No, I want the Declaration of Mr.
19 Bellecini, Mr. Schwartz, and all the exhibits to Docket No.
20 21.
21         COURTROOM DEPUTY: Okay. I'm afraid that I'm going
22 to print them in chambers, because they're 41 pages.
23         THE COURT: That's right.  We'll take a brief
24 recess for five minutes to allow you to --
25      (Whereupon, a recess is taken at 1:50 p.m., and the

1 court is reconvened at 1:58 p.m.)

2      THE COURT: Copy of Docket No. 21 prepared by Mr.

3 Bellecini and the same -- a true and correct copy of

4 Exhibit 21 (sic) to Mr. Schwartz for their review.

5      MR. SCHWARTZ: And what exhibit am I looking at,

6 Your Honor?

7      THE COURT: I direct your attention to Exhibit A.

8      MR. SCHWARTZ: Okay.

9      THE COURT: And turning to the first page of the

10 voluntary petition.

11      MR. SCHWARTZ: Okay.  Is this all I'm looking at

12 is Exhibit A?

13      THE COURT: No.  You're looking at -- what you've

14 been handed is Exhibit No. 21 prepared by your attorney,

15 Mr. Bellicini, filed on September 4, 2019 which the first

16 page is Mr. Bellicini's declaration, and then the next two

17 pages is your declaration, which he references and then

18 behind your declaration is Exhibit A, B, C, D, E and then a

19 Certificate of Service.

20      MR. SCHWARTZ: Is there a difference between --

21      THE COURT: Well, I'd like to direct your

22 attention to Exhibit A.  Turn to the first page of the

23 petition.  It says "Official Form 101 Voluntary Petition

24 for Individual Filing for Bankruptcy."

25      MR. SCHWARTZ: Okay.

1          THE COURT: All right.  You're at page No. 1?  Do
2   you need some assistance, Mr. Schwartz?
3          MR. BELLICINI: Maybe I can assist him, Your
4   Honor.
5          THE COURT: If you could, Mr. Bellicini.
6          MR. BELLICINI: I'd be happy to.
7          MR. SCHWARTZ: No, I'm seeing what's going on
8   here.
9          THE COURT: All right.  So on Official Form 101,
10  it's marked Chapter 13 and page 3 of Official Form 101 it
11  marks Chapter 13.
12         MR. SCHWARTZ: Right.  I see what's going on.
13         THE COURT: And then at Exhibit B, I'd like to
14  direct your attention to Official From 101 Voluntary
15  Petition, page 1, now box Chapter 7 is checked.  And when
16  you go to page 3 of Exhibit B, Chapter 7 is checked.
17         Thank you, Mr. Bellicini.  You can have a seat,
18  Mr. Bellicini.
19         MR. SCHWARTZ: Okay.  Which --
20         MR. BELLICINI: Pardon me?
21         THE COURT: You can have a seat.  Thank you.
22         MR. BELLICINI: Thank you, Your Honor.
23         MR. SCHWARTZ: Which -- okay.  So --
24         THE COURT: All right.  Can you explain to the
25  Court why it is that Exhibit A and Exhibit B are different

1  on pages 1 and 3 of the voluntary petition?

2         MR. SCHWARTZ: Okay.  Well, it's simple.  And this

3  is the first time I noticed this and I don't know what is

4  really going on here, but I want to preface my remarks by

5  saying one thing.  There was one doctor that diagnosed me

6  with dementia, but that --

7         THE COURT: Mr. Schwartz, I'm just asking you to

8  explain to me why they're different based on your prior

9  testimony.

10        MR. SCHWARTZ: Okay.  What I think is going on

11 here and I have to figure it out, I prepared a draft

12 Chapter 13 for Brook Street Holdings, LLC and gave it to

13 Heath when he -- 24 hours earlier.

14        THE COURT: On July 8th.

15        MR. SCHWARTZ: Thereabouts, I believe.  And he

16 didn't want to file a 13.  Like I said, I probably would

17 have filed it on my own if it was a 13 as on this test case

18 theory that I just talked about.  So I'm going to have

19 to -- so there is a 13 draft unsigned, to my knowledge,

20 floating out there.  Now --

21        THE COURT: Mr. Schwartz, you testified that

22 Exhibit A you received directly from Mr. Heath.  It's a

23 signed voluntary petition and the Chapter 13 boxes are

24 checked on pages 1 and 13.  I then have Exhibit B which you

25 said should be a direct identical copy of Exhibit A as

1  should Exhibit C and that you made no changes whatsoever.

2  You simply took the document you received from the client

3  and provided a copy to Mr. Kelvin and then filed it with

4  the court, and you testified under oath here today that you

5  made no changes whatsoever.

6          MR. SCHWARTZ: I made no changes.

7          THE COURT: I'm asking you to explain to me how it

8  is that Exhibit A and Exhibit B and Exhibit C differ, A,

9  pages 1 and 3 of the voluntary petition are different.

10         MR. SCHWARTZ: Okay. Now I'm trying to -- what

11  I'm telling His Honor is, on my computer is a draft of a 13

12  that I prepared. To my knowledge, it was never signed and

13  filed. I do not know, as I sit here now if Heath or even

14  in some confusion with Mr. Bellecini in preparing this

15  declaration that draft document got mixed up.

16         THE COURT: Mr. Schwartz, I'm going to take a

17  moment. I'm going to caution you. You're under oath.

18         MR. SCHWARTZ: I know that.

19         THE COURT: And if you continue or if you perjure

20  yourself, you will be held responsible. I'm warning you.

21         MR. SCHWARTZ: I'm trying to figure out what

22  happened.

23         THE COURT: Be careful what you say.

24         MR. SCHWARTZ: I understand. I'm trying to figure

25  out what happened here.

1       (Pause.)

2               Okay.  A --

3       (Pause.)

4               Okay.  Exhibit B is what I received --

5               THE COURT: No, Exhibit A is what you testified is

6       what you received from the client.

7               MR. SCHWARTZ: Well, Exhibit --

8               THE COURT: Mr. Schwartz, let me read.  It says --

9       paragraph 2 of your declaration says:

10              "On July 9th, 2019, I received instructions from

11              Debtor to file the petition for bankruptcy in

12              this matter.  The petition was signed by Attorney

13              Kelvin.  Attached as Exhibit A is a true and

14              correct copy of an electronic facsimile

15              transmittal I received from the Debtor at 9:37

16              a.m. (which you corrected that it was at p.m.) on

17              July 9th, 2019."

18      Exhibit A, the boxes on page 1 and 3 of the voluntary

19      petition, Chapter 13 is checked.  On Exhibit B and C, on

20      pages 1 and 3, Chapter 7 is checked.

21              MR. SCHWARTZ: Okay.  All I can tell you is --

22      first of all, I received -- I might have received -- how

23      the 7 got mixed up with the 13, I don't know, but I

24      received what I believe is a Chapter 7 signed, and I --

25              THE COURT: Which you provided to the court under

1  penalty of perjury what you received was a Chapter 13

2  filing.  That's what your testimony is under oath.  You not

3  only state that in your response filed on September 4th, but

4  I have a further declaration from you that -- this is from

5  Docket No. 32 filed on 9-27-19 and it indicates the exact

6  same thing.  Attached as Exhibit A -- and I will read

7  specifically what paragraph.  It says, paragraph 4 on page

8  2 of your declaration, it says:

9           "Attached as Exhibit A is a true and correct copy

10          of an electronic facsimile transmittal I received

11          from the Debtor at 9:37 a.m. on July 9th, 2019.

12          The petition for bankruptcy in this matter was

13          attached to the e-mail message.  I do not know

14          for certain who signed the petition for

15          bankruptcy in the matter.  It bears a signature

16          that purports to belong to Attorney David Kelvin.

17          On the morning of July 10th, 2019, I had a

18          telephone conversation..."

19  And then it goes on and refers to your conversation with

20  him, but Exhibit A is the same thing attached to your

21  previous declaration, and it's a voluntary petition for

22  Chapter 13, not a 7.  So you've stated under penalty of

23  perjury in writing twice, and today, you've testified to

24  the same thing.

25          MR. SCHWARTZ: Well, when I testified, I didn't

1  have these in front of me, but I'm telling you, Your Honor,

2  the fax that I got at 9:37 July 9th is what I confirmed to

3  Kelvin I was going to file, and I did file.  Now, there --

4          THE COURT: And I'm saying they're different, and

5  I'm asking you to explain how the document was changed.

6          MR. SCHWARTZ: Well, this Exhibit A, I do not

7  believe that, sitting here now, that this Fed Ex scan

8  1348K file is the attached 13 petition on this Exhibit A.

9  There's been some kind of a mistake.

10         THE COURT: All right.  Mr. Schwartz, I have no

11 further questions.  Mr. Bellecini --

12         MR. BELLECINI: Yes, Your Honor.

13         THE COURT:  -- do you have any questions for him?

14         MR. SCHWARTZ: I --

15         THE COURT: Mr. Schwartz, there's no question

16 before you right now.  Mr. Bellecini, just so you know, I'm

17 going to be continuing this OSC for further hearing.  So

18 this is not going to be your last opportunity to ask

19 questions of your client.

20         MR. BELLECINI: I'm so grateful to hear that, Your

21 Honor.  I have no questions at this time.

22         THE COURT: All right.  Thank you.

23         MR. SCHWARTZ: I'd like --

24         THE COURT: Mr. Schwartz, you can step down.

25         MR. SCHWARTZ: I'd like to state a belief.

1          THE COURT: Mr. Schwartz, you may step down.

2          MR. SCHWARTZ: Thank you, Your Honor.

3          THE COURT: All right.  Mr. Kelvin, if you could

4 come forward and be sworn in.

5          MR. KELVIN: There's an exhibit here, Judge.

6          THE COURT: That's all right.  You can just leave

7 it right there.

8          COURTROOM DEPUTY: Please raise your right hand.

9 Do you solemnly swear or affirm that the testimony you are

10 about to give in the matter now pending before this Court

11 will be the truth, the whole truth, and nothing but the

12 truth?

13          MR. KELVIN: I do.

14          COURTROOM DEPUTY: Thank you.

15          MR. KELVIN: May I sit down?

16          COURTROOM DEPUTY: Yes, you may.

17          THE COURT: All right.  Mr. Kelvin, have you had

18 an opportunity to review Docket No. 35 filed on October 7th

19 by Mr. Bellecini with the additional declaration from Mr.

20 Schwartz and the attached exhibits?

21          MR. KELVIN: He served me with a copy.

22          THE COURT: Have you had an opportunity -- have

23 you taken the time to look at it?

24          MR. KELVIN: I read what he sent to me, but there

25 were two declarations.  I mean there were two filings.

1  Neither one of them are endorsed.

2         THE COURT: There was a declaration from Mr.

3  Bellicini which then attached the further declaration of

4  Mr. Schwartz.

5         MR. KELVIN: I'm sorry to confuse you, Your Honor.

6  As I was coming into the metal detector, I actually dropped

7  my file, but there's -- on September 27th, Mr. Bellicini

8  served me with a response.

9         THE COURT: Right.

10        MR. KELVIN: Then there was a further filing, and

11 that's the part that I think I dropped.  Hold on just a

12 minute.  I have the further declaration of Donald Schwartz,

13 but I think at one point on top of that was a further

14 declaration of Mr. Bellicini.

15        THE COURT: Correct.  And I'm looking at Docket

16 No. 35, page 3 of 18, which is the further declaration of

17 Mr Schwartz.

18        MR. KELVIN: I think I'm holding it in my hand.

19 Is it a two-page document dated October 7th?

20        THE COURT: Correct.

21        MR. KELVIN: Yes, I have it.

22        THE COURT: All right.

23        MR. KELVIN: Somehow I've made a mess already.

24        THE COURT: It says at paragraph 2, it says:

25        "During the September 25th, 2019 telephone

1           conversation between Mr. Heath, myself and Mr.

2           Bellicini, Mr. Heath said that he met Mr. Kelvin

3           in person at the San Jose Superior Court on

4           either July 9th or July 10th, 2019, and Mr. Kelvin

5           signed the within petition for bankruptcy.  I do

6           not have knowledge or a belief of who is in

7           possession of the (quote) 'wet signature' (closed

8           quote) petition.  I do not have it because it

9           never came into my possession."

10   Did you sign the petition?

11           MR. KELVIN: No.  I stated in my declaration I

12   didn't sign it, and I state it again today.

13           THE COURT: All right.  And the first time you saw

14   the bankruptcy petition is when Mr. Bellicini sent it to

15   you when it was the initial response to this Court's OSC?

16           MR. KELVIN: Yes.

17           THE COURT: All right.  On July 9th, were you in

18   San Jose?

19           MR. KELVIN: I think I was.

20           THE COURT: And on July 10th, 2019?

21           MR. KELVIN: I have my calendar here.

22           THE COURT: Okay.

23           MR. KELVIN: I have a preliminary examination that

24   I believe is not even over yet, although it started in July

25   in Judge Silva's court.  It's a co-defendant case.  My

1  client is Mr. Collins.  And according to my calendar, it

2  started on the 8th and I think it continued to the 9th, and

3  it may well have continued to the 10th.  So the answer is

4  for sure on the 9th and probably on the 10th.

5          THE COURT: Okay.  All right.  Thank you.  And did

6  you meet with Mr. Heath on July 9th?

7          MR. KELVIN: No.

8          THE COURT: Did you meet with Mr. Heath on July

9  10th?

10          MR. KELVIN: No.

11          THE COURT: Did you meet with Mr. Health on July

12  8th?

13          MR. KELVIN: No.

14          THE COURT: All right.  When is the last time

15  you've seen Mr. Heath?

16          MR. KELVIN: Well, is that a trick question?

17          THE COURT: Nope.  I'm just asking you.  I don't

18  know the answer.

19          MR. KELVIN: I don't think I've ever met him.

20          THE COURT: Okay.

21          MR. KELVIN: I mean it's the kind of question that

22  assumes the answer, like when did you stop beating your

23  wife?

24          THE COURT: I don't disagree with you.  I just

25  assumed from what has been —- I've been -- the declarations

1   I've received from Mr. Schwartz have given the impression

2   that somehow you may know Mr. Heath.  If your testimony is

3   you know Mr. Heath, but you've never actually met him,

4   that's what I want to get clarification.  So --

5           MR. KELVIN: I'm sure I've never met him.

6           THE COURT: Okay.  Have you had the opportunity to

7   speak with Mr. Heath on behalf of Brook Street Holdings,

8   LLC with regards to the filing of a bankruptcy?

9           MR. KELVIN: No.

10          THE COURT: Have you ever had the opportunity to

11  speak with Mr. Heath on behalf of Brook Street, LLC with

12  regards to any business dealings concerning Brook Street

13  Holdings, LLC?

14          MR. KELVIN: No.

15          THE COURT: On July 9, 2010 (sic) did you have an

16  opportunity to speak with Mr. Schwartz?

17          MR. KELVIN: Yes.

18          THE COURT: Do you recall what the conversation --

19  again, there's July 9th and July 10th.

20          MR. KELVIN: Oh.  I'm sorry.  I had one

21  conversation with him, to my knowledge, and I thought it

22  was on the 10th.

23          THE COURT: Well, it may be.  I just said -- I

24  wanted to specifically ask if you'd had any -- you had

25  acknowledged previously in this OSC that you had spoken

1 with Mr. Schwartz on the morning of July 10th about

2 utilizing your ecf privileges.

3          MR. KELVIN: I thought it was Pacer, but the

4 answer is yes.

5          THE COURT: Okay.  My question to you is, the day

6 prior, July 9th, did you have an opportunity to speak with

7 Mr. Schwartz?

8          MR. KELVIN: No.

9          THE COURT: Did you have an opportunity to meet

10 with him?

11          MR. KELVIN: No.

12          THE COURT: On July 10th, you spoke with Mr.

13 Schwartz.

14          MR. KELVIN: Yes.

15          THE COURT: Did you speak with him in person or

16 over the telephone?

17          MR. KELVIN: Over the telephone.

18          THE COURT: All right.  And other than a

19 discussion regarding the use of your ecf or Pacer

20 privileges, did you discuss anything else with Mr.

21 Schwartz?

22          MR. KELVIN: Not that I recall.

23          THE COURT: And you didn't speak with Mr. Heath

24 that day.

25          MR. KELVIN: No.

1          THE COURT: That's July 10th.

2          MR. KELVIN: Yes, I did not.

3          THE COURT: You did not speak with Mr. Heath on

4    July 9th either.

5          MR. KELVIN: No.

6          THE COURT: Okay.  All right.  Mr. Bellicini, do

7    you have any questions?

8          MR. BELLICINI: I have a few, Your Honor.

9          THE COURT: All right.

10         MR. BELLICINI: Good afternoon, Mr. Kelvin.

11         MR. KELVIN: Good afternoon.

12         MR. BELLICINI: In your declaration, you state,

13   quote:

14             "I received the e-mail message to the Schwartz

15             response but it was not accurate and I basically

16             ignored it."

17   Do you recall that testimony?

18         MR. KELVIN: Is that in paragraph 3 of my

19   declaration?

20         MR. BELLICINI: It is, the very last sentence.

21         MR. KELVIN: Yes, I see it.

22         MR. BELLICINI: Okay.

23         THE COURT: And Mr. Bellicini, just for the

24   record, you're referring to Docket No. 30 filed on 9-18

25   with the court?  It's the declaration of Mr. Kelvin.

1          MR. BELLICINI: I have that declaration in front

2     of me.  I do not have the docket number.

3          THE COURT: Okay.  For the record's purpose, it is

4     Docket No. 30 filed on the 18th of September.

5          MR. BELLICINI: So -- and just so that we're

6     clear, that would be the e-mail that Mr. Schwartz attached

7     as Exhibit B to his September 4th declaration.

8          MR. KELVIN: Hold on.

9          MR. BELLICINI: Which is attached to an e-mail.

10         MR. KELVIN: I see an Exhibit A.  You're going to

11    have to help me, Mr. Bellicini.  I see a document --

12         MR. BELLICINI: May I approach the witness, Your

13    Honor?

14         THE COURT: You may, Mr. Bellicini.

15         MR. BELLICINI: Thank you, Your Honor.

16         MR. KELVIN: It says here Exhibit A, right?  Then

17    there's a B somewhere.

18         MR. BELLICINI: There's Exhibit A.  I want Exhibit

19    B.

20         MR. KELVIN: I know you do.  I'm not clear where

21    it is.  But it should be underneath A somewhere.  I believe

22    it's in this stack because all this was on top of each

23    other.

24         MR. BELLICINI: I'll just show you mine.  It's

25    Exhibit B.  That's the e-mail to you dated July 10th at 9:14

1  a.m.  This is the e-mail -- you have never seen it.

2          MR. KELVIN: Yeah, I received it.

3          MR. BELLICINI: Thank you.  And it's your

4  testimony you ignored this e-mail, right?

5          MR. KELVIN: I thought I replied to an e-mail.

6          MR. BELLICINI: Your declaration says, quote:

7              "But it was not accurate, and I basically ignored

8              it."

9  Closed quote.  Right?

10          MR. KELVIN: Well, were there two e-mails?  I'm

11  sorry.  I shouldn't be asking questions.  If I said I

12  ignored it; that's what I did.

13          MR. BELLICINI: So you didn't reply to that e-

14  mail.  That's your testimony.

15          MR. KELVIN: I don't think so.  I think I sent an

16  e-mail where I said that that was not my recollection, so

17  maybe --

18          MR. BELLICINI: You did, but that's not in your

19  declaration; is it?

20          MR. KELVIN: I didn't say it was in my

21  declaration; I just said I sent an e-mail.

22          MR. BELLICINI: In your declaration, you said that

23  you ignored the e-mail to Mr. Schwartz.

24          THE COURT: To be correct, Mr. Bellicini, he says

25  "I basically ignored it."  I think he qualified "ignored

1  it." I don't know what "basically" means, but there is a

2  word that qualifies "ignored." And Mr. Bellicini, just so

3  we can get to the -- move this along, you attach -- we have

4  an e-mail back from Mr. Kelvin to Mr. Schwartz.

5       MR. BELLICINI: Yes, we do. This was attached in

6  response to Mr. Kelvin's declaration per this Court's

7  order. And the only point I wanted to make here was that

8  Mr. Kelvin --

9       THE COURT: Do you have a question for Mr. Kelvin?

10      MR. BELLICINI: I have no further questions. I

11 think I sufficiently touched on the issue, Your Honor.

12      THE COURT: Okay. All right. Mr. Kelvin, again

13 I'm following up from Mr. Schwartz's declaration at Docket

14 No. 30 filed on 10-7-19. He indicates at paragraph 4, he

15 says:

16           "I did not prepare the within dismissal. Mr.

17           Heath handed me the original dismissal on July

18           10th, 2019, and I obtained the copy that I filed

19           with Mr. Kelvin's e-signature from a flash drive

20           that Mr. Heath handed to me. In the telephone

21           conversation my attorney and I had with Mr. Heath

22           on September 25th, 2019, Mr. Heath stated that he

23           himself drafted the dismissal."

24 In paragraph 5, he goes on and says:

25           "In continuation of the time line from paragraph

1               8 of my declaration in support filed on September

2               27th, 2019, on July 10th, 2019 at 10:29 a.m., I

3               replied to Mr. Kelvin's e-mail of 10:11 a.m.,

4               copy attached as Exhibit H and told him I would

5               dismiss the case."

6 And Exhibit H is an e-mail string.  It basically starts

7 with:

8               "This will confirm our call this morning that you

9               instruct and authorize the courier delivery to

10               the USBK Court the attached petition.  Your

11               response on Wednesday, July 10th at 10:11, that is

12               not my recollection."

13 Do you know what you meant by "that is not my collection"?

14         MR. KELVIN: Well, he said I told him he was

15 authorized and instructed to file it.  I didn't authorize

16 or instruct him to file anything.

17         THE COURT: Okay.

18         MR. KELVIN: How could I do that?  I didn't have

19 any authority.

20         THE COURT: All right.  And then on Wednesday,

21 July 10th, 2019, at 10:29 a.m., he responds to you by e-mail

22 and says:

23               "Then there is a confusion.  I will dismiss the

24               case."

25 Did you receive that e-mail?

1          MR. KELVIN: I can't remember, but I think so.

2     It's sent to my address.

3          THE COURT: Okay.  When you received it, did you

4     have any thoughts why he was sending that to you?

5          MR. KELVIN: Not a clue.  And here he's saying I

6     prepared the dismissal.  I mean how is that possible?

7          THE COURT: All right.  Well, Mr. Heath has

8     indicated he prepared it.  And you've testified that you

9     did not sign the dismissal.

10          MR. KELVIN: No.  It's not my signature, Judge.

11          THE COURT: All right.  And then Exhibit I is

12     another e-mail from Mr. Schwartz to you and it says:

13          "Here's the request for dismissal."

14     Did you receive that?

15          MR. KELVIN: I'm not seeing Exhibit I, but I am

16     confident that the first time I saw either the petition or

17     the dismissal was when Mr. Bellicini sent them to me.

18          THE COURT: That's why I'm asking.  On Exhibit I,

19     this is Exhibit I to the declaration of Mr. Schwartz,

20     that's why I wanted to know whether you —- and it says:

21          "Here's the request for dismissal."

22     And then it attaches a voluntary dismissal that has your

23     name on it.

24          MR. KELVIN: My very clear recollection is the

25     first time I saw either of these documents was when they

1  were attached to Mr. Bellicini's declaration or his filing.

2          THE COURT: Okay.  All right.  I have no further

3  questions.  Mr. Kelvin, thank you.

4          MR. KELVIN: Thank you, Judge.

5          THE COURT: Mr. Fehr, do you have any questions?

6          MR. KELVIN: Oh, I almost mixed up your exhibit

7  with mine.  I have a bad habit of doing that.

8          THE COURT: That's all right.  Thank you.

9          MR. FEHR: Not at this time, Your Honor.

10          THE COURT: All right.  Mr. Katz?

11          MR. KATZ: I have one.

12          THE COURT: All right.

13          MR. KATZ: It's of this witness.  I know you said

14  you never met Mr. Edwin Heath, but have you ever

15  represented him as an attorney in any matter?

16          MR. KELVIN: I don't think so.  I saw your filing

17  where you said I wrote a letter back in 2016.  I don't

18  remember writing that letter, and you didn't attach it.

19          MR. KATZ: You're correct; I didn't.  But are you

20  familiar with the property at 3070 Brook Street?

21          MR. KELVIN: I mean I don't know what you mean by

22  "familiar."  I know it exists.  I know there's a

23  foreclosure.

24          MR. KATZ: Do you have a relationship with CNA

25  Equity, which is a lender?

1          MR. KELVIN: No.

2          MR. KATZ: Are you -- do you know Mr. -- it'll

3    come to me -- the broker up in Montclair at Coldwell

4    Banker?

5          MR. KELVIN: I believe there's more than one.

6    You're going to have to be a little more specific.

7          MR. KATZ: I don't have my file with me.  I can't

8    remember if his name is Schwab or something.

9          MR. KELVIN: It's not Charles Schwab; is it?

10         MR. KATZ: No.

11         MR. KELVIN: I can't help you.  I know a lot of

12   people.

13         MR. KATZ: Okay.  Yeah.  Okay, do you have any

14   business relationship with anybody at Coldwell Banker in

15   the Montclair Oakland Branch?

16         MR. KELVIN: Yeah.  I had a dispute over a house

17   in Maxwell Park, and I represented the seller who was

18   trying to cancel the sale, and the buyer went to court and

19   received a decree of specific performance, and I had to go

20   to that Coldwell Banker office to sign some documents to

21   close the transaction.

22         MR. KATZ: And do you remember who the person at

23   Coldwell Banker -- at that office is -- was?

24         MR. KELVIN: It was a lady.  She's kind of cute.

25         MR. KATZ: Okay.  Are you familiar with anybody at

1  CNA Equity?  I can't remember if it's Partners, but that

2  lender up in the valley?

3          MR. KELVIN: No, I thought that was a certified

4  nursing assistant.  I'm not familiar with CNA.

5          MR. KATZ: Okay.  Are you familiar with an

6  appraiser who did an appraisal for 3070 Brook Street

7  Holdings?  Well, no, I'm sorry; it wasn't for 3070 Brook

8  Street Holdings, of the property at 3070 Brook Street in

9  2016.

10          MR. KELVIN: No, I'm not familiar with an

11  appraisal or the appraiser.

12          MR. KATZ: Are you familiar with an appraisal that

13  was done some time either in 2016 or 2017 or maybe even

14  2018 on Wood Street Plaza in San Francisco?

15          MR. KELVIN: Wood Street Plaza?

16          MR. KATZ: Yeah.

17          MR. KELVIN: That's different than Brook Street?

18          MR. KATZ: Correct.

19          MR. KELVIN: No, I'm not.

20          MR. KATZ: Well, it was the property before Wood

21  Street Plaza bought it.

22          MR. KELVIN: I'm not familiar with it.

23          MR. KATZ: Okay.  That's all I have.

24          THE COURT: All right.  Thank you.  All right.

25  Anything else, gentlemen?  Mr. Bellicini, anything?

1          MR. BELLICINI: Nothing further, Your Honor.

2          THE COURT: Okay.  All right.  Mr. Kelvin, you can

3    step down.  Thank you.

4          MR. KELVIN: Thank you, Judge.  I had a very neat

5    file when I came here.

6          THE COURT: All right.  What I'm going to do is

7    I'm going to indefinitely continue this OSC until the

8    United States Trustee and the Chapter 7 Trustee have done

9    further investigation with regards to this bankruptcy and

10   possibly other bankruptcies.  I will likely expand the

11   nature and extent of the OSC.  I may add an additional

12   individual or individuals to it, but at this juncture, I

13   think until there's some further investigation done by the

14   Trustees, various trustee's offices, I think it would be

15   prudent to indefinitely continue it.

16         Mr. Bellicini, if you could come forward just at

17   the side bar.

18         MR. BELLICINI: Thank you, Your Honor.

19      (Off the record side bar discussion.)

20         THE COURT: All right.  Again, the Court will

21   issue when it wishes to resume with the OSC, but it's going

22   to be indefinite.  The Court will issue a new notice and

23   will notify Mr. Bellicini, Mr. Kelvin.

24         Mr. Russo, we have your card.  We can add you to

25   that.

1            MR. RUSSO: That would be wonderful.

2            THE COURT: Okay.  And then Mr. Katz, what the

3 Court is probably going to be wanting to see is what the

4 United States Trustee and the Chapter 7 Trustee find out in

5 further investigation.  I want you to know that although

6 the documents haven't been filed and Mr. Schwartz -- and

7 Mr. Bellecini has advised the Court that pursuant to

8 unrelated State Bar proceedings, Mr. Schwartz may be

9 suspended for a period of time, this case is not being

10 dismissed.  There apparently is an asset.  There are

11 creditors, and the asset may in fact have some equity in

12 it, from at least what Mr. Katz has provided to the Court,

13 and Mr. Katz, if Mr. Mansdorf and/or the U.S. Trustee wants

14 something back before the Court, you can request a status

15 conference.  I'll be happy to do that.

16            If there's issues with regards to further 2004

17 examinations or any discovery and you need the assistance

18 of the Court, you can feel free to contact Ms. Berly

19 (Phonetic).  Those can be conducted in this courtroom

20 subject to this courtroom's availability so that I'm

21 available if there are issues regarding questions.  I'll be

22 here to assist in that process.  Okay?

23            MR. RUSSO: Thank you.

24            THE COURT: All right.  Thank you all.  We are

25 adjourned for the day.

1  (Whereupon, the proceedings are concluded at 2:37 p.m .)

2

3

4

5

6

7

8                    CERTIFICATE OF TRANSCRIBER

9

10

11       I certify that the foregoing is a correct

12    transcript from the digital sound recording of the

13    proceedings in the above-entitled matter.

14

15    DATED: October 23, 2019

16

17                    By:___/s/ Jo McCall_____

18

19

20

21

22

23

24

25